JUSTICE DUBOFSKY
specially concurring:
I am concerned about the broad sweep of the majority opinion which, by lowering standing barriers to citizen and taxpayer suits, threatens to transform the courts of this state into forums in which to air generalized grievances about the conduct of state government. While I concur in the result reached by the majority, concluding that plaintiffs have standing to pursue their claims, I do so on narrower grounds.
Plaintiff citizen-taxpayers complain that funds expended by the Department of Social Services (Department) for abortions have never been specifically earmarked for that purpose by the Legislature in contravention of Art. Y, Sec. 32 and Sec. 33 of the Colorado Constitution.[1] As a corollary they complain that the Department disbursed the funds without statutory authority.
The majority find that plaintiffs here have standing based upon this Court’s earlier decision in Wimberly v. Ettenberg, 194 Colo. 163, 570 P.2d 535 (1977). In Wimberly this Court said that the proper inquiry on standing is “whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions.” 194 Colo, at 168, 570 P.2d at 539. This inquiry comprises two steps: first, whether plaintiff was injured in fact; second, whether a legally protected interest was invaded. Here the majority finds that a legally protected interest is drawn into question by the allegation that the *384 expenditures violated Colo. Const. Art. V, Sec. 33. It then concludes that this same allegation satisfies the first requirement, deciding that infringement of a constitutional guarantee injures the general citizenry’s interest in constitutional governance. The Court’s reasoning collapses Wimberly’s two-part standing inquiry into a single question: has a citizen-taxpayer averred a violation of a specific constitutional duty or prohibition? If he has, he has standing to secure judicial review of any legislative or executive action to which he objects.
Whether a constitutional guarantee can properly be understood to confer a right to relief — and hence standing — on a particular class of plaintiffs is a difficult question. I think, rather than conferring standing on all citizen-taxpayers who complain of constitutional improprieties, we should approach each case mindful of the purpose contemplated by the provision under which the action has been brought.
In the ordinary case, a plaintiff who demonstrates injury in fact to an interest protected by the substantive law in question will be entitled to have the court decide the merits of the dispute. Wimberly v. Ettenberg. However, neither a concrete personal injury nor a clearly recognizable legal interest is always discernable in suits challenging the constitutionality of legislative or executive actions. Typical of cases in this category are public actions brought, as was this case, to vindicate rights shared in substantially equal measure by all citizens or members of the tax-paying public.
Suits such as these highlight the tension between the judiciary’s limited powers and its role as a check on the co-ordinate branches of government. They tempt the courts to overlook prudential limitations on standing, rooted in the separation of powers, in order to redress otherwise nonjusticiable wrongs.[2] Confronted by this dilemma, the United States Supreme Court has consistently rejected the reasoning adopted by the majority.
“In some fashion, every provision of the Constitution was meant to serve the interests of all ... . [However,] the proposition that all constitutional provisions are enforceable by any citizen simply because citizens are the ultimate beneficiaries of those provisions has no boundaries.”
*385 Schlesinger v. Reservists’ Committee to Stop the War, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); see United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), id., (Powell, J. concurring); see also Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (Harlan, J. dissenting). I believe that the majority opinion in this case also “has no boundaries.” Giving every citizen or taxpayer standing to litigate his personal views of constitutionality, legality or the public interest
“would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing ‘government by injunction.’”
Schlesinger v. Reservists’ Committee to Stop the War, 418 U.S. at 222,94 S.Ct. at 2933.
On the other hand, courts cannot abdicate their responsibility to redress constitutional wrongs simply because the interest invaded is shared by all or substantially all citizens. Since my principal objection to unlimited citizen-taxpayer standing is based on the doctrine of separate powers embodied in Colo. Const. Art. Ill, I would adopt a standing inquiry suggested by Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Like the majority, I believe that the injury required by Wimberly v. Ettenberg “may exist solely by virtue of ‘statutes [and constitutional provisions] creating legal rights, the invasion of which creates standing.’” Warth v. Seldin, 422 U.S. at 500, 95 S.Ct. at 2206. I do not, however, conclude that citizens or taxpayers ipso facto have standing to complain of every alleged injury to their interest in constitutional governance. Instead, I would inquire “whether the constitutional . . . provision on which the claim rests properly can be understood as granting persons in the plaintiffs position right to judicial relief.” Id. (emphasis added). Because an affirmative answer to this question diminishes the risk that adjudication may intrude upon the constitutional prerogatives of coordinate branches, a relaxation of barriers to citizen-taxpayer standing sometimes will be appropriate.
In this case the standing issue should be resolved by asking whether Colo. Const. Art. V, Sec. 32 and Sec. 33 properly can be understood as granting citizens or taxpayers a right to judicial relief. The legislative appropriation procedures prescribed by those sections guard against improper executive expenditures of tax revenue by ensuring that the purposes for which monies are spent are subject to legislative and public scrutiny. See In re House Bill No. 168, 21 Colo. 46, 39 P. 1096 (1895). While “[o]ur system of government leaves many crucial decisions to the political processes,” Schlesinger v. Reservists’ Committee to Stop the War, 418 U.S. at 227, 94 S.Ct. at 2935, a right to judicial relief may be implied when the injury, “however widely inflicted, is such as to impede the *386 effective operation of majoritarian processes.” L. Tribe, American Constitutional Law §3-20 (1978). The scrutiny of appropriations measures contemplated by Sec. 32 and Sec. 33 helps to assure executive and legislative accountability to the electorate — an objective which is frustrated if the legislature fails to explicitly appropriate monies for the purposes for which they are being spent. See United States v. Richardson (Douglas, J. dissenting). I, therefore, am satisfied that plaintiffs have standing to challenge the Department’s expenditures for abortions as unlawful under Colo. Const. Art. V, Sec. 32 and Sec. 33.
This does not mean that the legislature must earmark or line-item every dollar expended; that decision awaits an adjudication on the merits. It means only that Section 32 and Section 33, properly understood, grant citizens and taxpayers a right to judicial interpretation of the provision: “No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law. . . .” Colo. Const., Art. V, Section 33 (1978 Supp.).
JUSTICE ERICKSON has authorized me to say that he joins in this concurrence.

 Colo. Const., Art. V
Sec. 32: “The general appropriation bill shall embrace nothing but appropriations for the expense of the executive, legislative and judicial departments of the state, state institutions, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.”
Sec. 33: “No moneys in the state treasury shall be disbursed therefrom by the treasurer except upon appropriations made by law, or otherwise authorized by law, and any amount disbursed shall be substantiated by vouchers signed and approved in the manner prescribed by law.” (See 1978 Supp.)

 “Although state courts are not subject to the provisions of Article III of the United States Constitution, similar considerations operate to require state courts to apply the standing doctrine. In Colorado, Article III of the Colorado Constitution prohibits any branch of government from assuming the powers of another branch. Courts cannot, under the pretense of an actual case, assume powers vested in either the executive or legislative branches of government. . . . ‘[Tjhis caution has been proverbially observed by the courts, lest in their zeal to prevent what they deem unjust, they exceed their judicial authority, assert an unwarranted superiority over their co-ordinate governmental branches and invade the fields of policy preserved to the legislative arm or the realm of administrative discretion lodged in the executive branch.’” Wimberly v. Ettenberg, 194 Colo, at 167, 570 P.2d at 538.